### HAHN v. CONRIED METROPOLITAN OPERA CO.

(Supreme Court, Appellate Division, First Department. June 5, 1908.)

1. MASTER AND SERVANT—INJURY TO SERVANT—"PLACE" TO WORK.

A bridge used as a part of the scenery in a play was not a "place" within the rule which requires the master to furnish his employés with a safe place to work, but was rather an appliance, such as scaffolding used in the conduct of the work has been held to be.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 179, 200.

For other definitions, see Words and Phrases, vol. 6, pp. 5386–5387.]

2. SAME—EVIDENCE.

In an action for injuries to an actor by the giving way of a bridge, a part of the scenery, where the evidence showed that the timber used in its construction was comparatively new, and that it exhibited no visible defects, and that the bridge was designed to hold 50 or 60 people, and that not more than 14 were on it when it broke, the mere happening of the accident is not enough to establish actionable negligence on the part of the defendant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 881, 898, 955.]

3. SAME—NEGLIGENCE OF FELLOW SERVANT.

Where the collapse of a bridge used as a part of the scenery in a play occurred from some careless omission on the part of the stage hands in bolting the structure together, it was negligence of the co-employés of an actor, for which the proprietor of the theater was not liable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 449–474.]

Houghton and Laughlin, JJ., dissenting.

Appeal from Trial Term.

Action by Jeanette K. Hahn against the Conried Metropolitan Opera Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGH-
TON, and SCOTT, JJ.

Theodore H. Lord, for appellant.
Solon J. Liebeskind, for respondent.

SCOTT, J. The defendant appeals from a judgment in favor of
plaintiff entered upon a verdict. The defendant was lessee and mana-
ger of the Metropolitan Opera House in the city of New York, and
the plaintiff was in its employ as a member of the chorus in the pro-
duction of the opera "Carmen." The stage setting of the first act
of this opera involves the use of what is apparently a bridge, over
which a number of the members of the company, male and female,
pass to and fro. This bridge was constructed upon plans designed
by an employé of defendant described as the technical director, and is
set up by the stage hands as required, remaining in position only dur-
ing a single act. It consists of two platforms or tables, securely fast-
ened to the floor of the stage, about 19 feet apart. Between these
run three stringers, stiffened and strengthened by tension rods set
up by turnbuckles. On top of the stringers are laid planks con-
stituting the floor of the bridge. This structure is masked in front
by painted work in order to present to the audience the appearance
of a bridge. The plaintiff and some other members of the chorus
were standing on this structure, and other members of the company
representing soldiers were passing over it, when it collapsed and fell
to the stage, carrying plaintiff with it. From this accident she re-
ceived injuries for which she sues.

The plaintiff contented herself with proving the happening of the
accident and the injuries received. The defendant assumed the burden
of proving that the bridge was properly constructed. The bridge,
as has been said, was constructed after the design of the technical
director, who had been engaged in like business for many years, and
had had experience in a number of important scenic productions. He
described in detail the plan and method of such construction which
it is not necessary to recapitulate here, because no evidence was pro-
duced tending to show any defect in design. It appeared without con-
tradiction that the timber used in the construction was comparatively
new, and at least new that season, and that it exhibited no visible de-
fects. It also appeared that the bridge was designed to be of suffi-
cient strength to hold 50 or 60 people, and that not more than 14
were on it when it broke down. A similar bridge had been frequent-
ly used in this and other operas without accident. When the bridge
was set up by the stage hands, the several parts were bolted together.
The mere happening of the accident certainly justifies the inference
that there was some defect either in the design or construction of
the bridge, or in the manner in which it was put together on the night
on which the accident happened; but this is not enough to establish
actionable negligence on the part of the defendant. The bridge was
not a "place" within the rule which requires the master to furnish his
employés with a safe place to work, but was rather an appliance, such
as a scaffolding used in the conduct of the work has frequently been
held to be. Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017;

Benzing v. Steinway, 101 N. Y. 547, 5 N. E. 449; Stringham v. Hilton, 111 N. Y. 188, 18 N. E. 870, 1 L. R. A. 483; Kimmer v. Weber, 151 N. Y. 417, 45 N. E. 860, 56 Am. St. Rep. 630. The duty of the master with reference to such an appliance was fully performed when he had furnished competent and experienced persons to design and construct it, and a sufficient quantity of proper material with which to build it, and there is nothing in the case to justify an inference that the defendant had failed in either of these particulars. On the contrary, all the evidence upon the subject is to the contrary. If the collapse occurred from some careless omission on the part of the stage hands in bolting the structure together, as may have been the case, this was negligence of co-employés of the plaintiff, for which the defendant is not to be held liable, for this was a mere detail of the work, properly intrusted to plaintiff's fellow servants, for whose negligent performance the master is not responsible. Kimmer v. Weber, supra. The jury was properly instructed as to the extent of the defendants' liability, but their verdict was plainly against the evidence in the case.

The judgment and order appealed from must therefore be reversed, and a new trial granted, with costs to the appellant to abide the result.

CLARKE, J., concurs.     INGRAHAM. J., concurs in result.

HOUGHTON and LAUGHLIN, JJ., dissent.