SKRODANES et al. v. KNICKERBOCKER ICE CO.

(Supreme Court, Appellate Division, Second Department. November 19, 1915.)

MASTER AND SERVANT ☞265—INJURY TO SERVANT—RES IPSA LOQUITUR—
    BREAKING OF ROPE.
        Proof of the breaking of a rope used by defendant in hoisting an ice slide, used to run ice down into its wagons, into position, and that it was black and soft, did not of itself give rise to the doctrine of res ipsa loquitur, and without other evidence as to its size, the time it has been used, etc., did not establish any defect.
        [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. ☞265.]

Appeal from Trial Term, Dutchess County.

Action by Frank Skrodanes and another, as administrators, etc., of Joseph Skrodanes, deceased, against the Knickerbocker Ice Company. From a judgment in favor of plaintiff, and an order denying its motion for a new trial, defendant appeals. Judgment and order reversed, and new trial granted.

Argued before JENKS, P. J., and STAPLETON, MILLS, RICH, and PUTNAM, JJ.

Frederick M. Thompson, of New York City, for appellant.
Morschauser & Mack, of Poughkeepsie, for respondents.

RICH, J. This appeal is from a judgment in favor of the plaintiffs in an action to recover for the death of their intestate, caused, as alleged, in consequence of the negligence of defendant, and from an order denying its motion for a new trial made on the minutes.

At the time of the accident the deceased was engaged, with other employés of defendant, in hoisting an ice slide, used to run ice down to its wagons, into position. One end of the slide was being raised by a block and tackle, having two blocks at the upper end, which drew

nearer together as the end of the slide was raised. Several employés, of whom the deceased was one, were engaged in this work under the supervision of defendant's foreman. During the process the rope broke, causing the apparatus to fall upon deceased, who died in consequence of the injuries inflicted. The action is brought under the provisions of the Employers' Liability Act, and while the complaint and notices served claim, as the basis for defendant's liability, failure of its superintendent to inspect and examine the appliances, hooks, subways, ropes, blocks, and tackle in use at the time of the accident, which it is averred had become and were worn, decayed, rusted, defective, out of order, and consequently dangerous, the proof given upon the trial was limited to the condition of the rope that broke, and the orders given by the foreman immediately preceding the accident.

The defendant, after moving to dismiss the complaint (and taking an exception to the denial of its motion), rested without offering any proof, and the court submitted to the jury the question of defendant's negligence in two respects: First, whether the rope furnished and used by defendant's employés was an unsuitable and unsafe appliance with which to do the work; and, second, was defendant's foreman guilty of negligence in directing the men immediately preceding the accident? instructing them substantially that, if either question was answered in the affirmative, the plaintiff was entitled to a verdict. At the close of the main charge the defendant asked the court to instruct the jury:

"That there is not sufficient evidence in this case from which the jury might find that the rope had become worn or in any way defective by use as to its strength."

The exception to this refusal to charge presents reversible error. There was no proof of the size of the rope or how long it had been in use. No witness testified who had examined it, either before or after the accident. The testimony of fellow laborers of deceased was that the rope was black and soft, meaning, as some of them said, that it was not stiff, like a new rope. Although some of them testified that it had been used a long time, no one was able to say how long, or that he had ever seen it in use before the day of the accident. One witness said the rope was shabby and bruised, but on his cross-examination testified that he observed nothing about the rope, except that it was black in color, and that he based his opinion on that fact. Some of the witnesses stated that a rope which lay on the ground around an icehouse would soon become dirty and black.

I am unable to differentiate the case at bar from Dugan v. American Transfer Co., 160 App. Div. 11, 145 N. Y. Supp. 31, in which it was held upon similar facts that the fact that the rope broke, standing alone, did not give rise to the doctrine of res ipsa loquitur; that proof that the rope was dark in color and not in very good condition did not establish a cause of action, in the absence of evidence of some defect. As was said in that case:

"Plaintiff could have had a discovery and inspection of these broken rope ends, by which the condition of the rope fibers and the apparent causes of this break could have been brought out, and not left, as at present, to mere speculation."

Counsel for the respondent contends that it is established in the case at bar that the rope was soft, worn, discolored, and black, inside and outside, which distinguishes it from the Dugan Case; but a careful reading of the testimony shows that it does not sustain the contention.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.