Lanira **REYNOLDS**, as widow and permanent administratrix of the estate of Jack Wilton Reynolds, Jr., deceased, Plaintiff,

v.

**SOUTHERN RAILWAY COMPANY,**
Defendant and Third-Party Plaintiff,

v.

Carl F. **LARSEN**, Jr., d/b/a Southeastern Wood Products Company, Third-Party Defendant.

**Civ. A. No. 11849.**

United States District Court, N. D. Georgia, Atlanta Division.

Sept. 30, 1969.

See also, D.C., 45 F.R.D. 526.

Paul R. Koehler, Raymond Alhadeff, Atlanta, Ga., for plaintiff.

Greene, Buckley, DeRieux, Moore & Jones, Atlanta, Ga., for Southern Railway.

Ross & Finch, Atlanta, Ga., for Carl F. Larsen, Jr., and Southeastern Wood Products Co.

## ORDER

EDENFIELD, District Judge.

This case comes to us on the third-party defendant's motion to dismiss defendant's third-party complaint against it. Decedent, on whose behalf plaintiff sues, was an employee of the defendant allegedly acting within the scope of his employment, at the time he was crushed to death between a boxcar and a retaining wall. Plaintiff alleged negligence by Southern Railway as to its cars, engines, appliances, machinery, track roadbed, wharves, location of tracks, retaining wall, and breach of railroad safety regulations. Plaintiff was presumably covered by the Federal Employers' Liability Act, 45 U.S.C. § 51. On April 14, 1969, the plaintiff and defendant settled their suit and Southern allowed a consent verdict filed against it by the court in the amount agreed upon by the parties. Before settlement, defendant had filed a third-party complaint alleging that negligence of the third-party defendant in locating, constructing and maintaining its buildings, wharves, and retaining walls was a contributing cause to plaintiff's husband's death. Defendant seeks contribution from the third-party defendant.

There are two central issues in considering the motion to dismiss the third-party complaint. First, we must decide if contribution between tortfeasors is permissible when the defendant's liability is based on the Federal Employers' Liability Act (FELA). Second, we must consider if contribution against the third-party defendant is permissible when the initial action between the plaintiff and defendant has been settled pursuant to a consent judgment.

Contribution is allowable in FELA cases, even though the liability of the defendant is statutory and that of the alleged joint tortfeasor may—as here—arise from common law. Contribution is dependent upon *common liability* but the mere fact that liability arises from different sources does not preclude joint responsibility. As the Eighth Cir-

cuit put it in Chicago, R. I. & P. R. R. v. Chicago & N. W. Ry., 280 F.2d 110, 115 (8th Cir. 1960), cert. denied, 364 U.S. 931, 81 S.Ct. 378, 5 L.Ed.2d 364:

> "The essence of the action for contribution is *common liability* to the injured person, not liability for *common negligence,* or *similar* negligence or *like* negligence. Simply stated, common liability means that each party, by reason of his wrongful act, is made legally liable to respond in damages to the injured party."

While it is true that under FELA the contributory negligence of the employee only mitigates damages, but may bar common law recovery against the third-party defendant, this in itself is insufficient to destroy the requisite common liability required for contribution. Zontelli Bros. v. Northern Pacific Ry., 263 F.2d 194 (8th Cir. 1959). The is particularly true in Georgia, a comparative negligence state. Swift & Co. v. Phelps, 273 F.2d 551 (6th Cir. 1960). Even in states generally prohibiting contribution between tortfeasors, contribution has long been permitted in cases where the employer-railroad, under FELA, has been held liable to its employee. Annot., 19 A.L.R.3d 928 (1968).

Thus, almost without exception, courts have uniformly permitted a defendant-railroad, such as Southern Railway, to receive contribution after an FELA payment. Chicago & N. W. Ry. v. Minnesota Transfer Ry., 371 F.2d 129 (8th Cir. 1967); Chicago, R. I. & P. R. R., supra; Patterson v. Pennsylvania Ry., 197 F.2d 252 (2d Cir. 1952); Gulf, Mobile & Ohio R. R. v. Arthur Dixon Transfer Co., 343 Ill.App. 148, 98 N.E.2d 782 (1951); Annot., 19 A.L.R.3d 928 at § 2. While the Fifth Circuit has stated to the contrary in Fort Worth & Denver Ry. v. Threadgill, 228 F.2d 307 (5th Cir. 1955), which stands in almost solitary isolation on this issue, 19 A.L.R.3d 928 at § 2, that case was based in large measure on the plaintiff's proven contributory negligence. It is most frequently cited for the contributory negligence prop-osition. *See, e. g.,* Panichella v. Pennsylvania Ry., 167 F.Supp. 345, 351 (W.D. Pa.1958), rev'd on other grounds, 268 F.2d 72 (3d Cir. 1959), cert. denied, 361 U.S. 932, 80 S.Ct. 370, 4 L.Ed.2d 353; Kennedy v. Pennsylvania Ry., 282 F.2d 705 (3d Cir. 1960). Only in a footnote did the Court state that contribution should also be denied on the ground that common liability did not arise when one tortfeasor's liability depended upon FELA and the other's on common law. *See, also,* Sleeman v. Chesapeake & Ohio R.R., 290 F.Supp. 830, 834 (W.D.Mich. 1968). As one commentator put it:

> "Only one case [*Fort Worth*, supra] within the scope of this annotation has specifically said that there is no common liability between a tortfeasor whose liability is based upon the Federal Employers' Liability Act and one whose liability is based upon common law. * * * However, this statement was made in a footnote at the end of the decision and was not an integral part of the opinion." 19 A.L. R.3d 928, 932, and n. 12 on 932.

Moreover, the Fifth Circuit, in its pithy dictum in *Fort Worth*, supra, discussed none of the cases which permitted contribution. Likewise, a long series of cases have allowed indemnity by railroad employers in FELA cases, a means of recovery allied to contribution. Booth-Kelly Lumber Co. v. Southern Pacific Co., 183 F.2d 902 (9th Cir. 1950); Blair v. Cleveland Twist Drill Co., 197 F.2d 842 (7th Cir. 1952); Waylander-Peterson Co. v. Great Northern Ry., 201 F.2d 408 (8th Cir. 1953).

We agree—and feel that the Fifth Circuit would also—that:

> "A general prerequisite for the recovery of contribution by the railroad from the third party is that there must be common liability to the injured person between the joint tortfeasors. This apparently does not mean that the source of liability— whether it be statutory or common law—must be the same but means,

simply stated, that each party, because of its wrongful act, is made legally liable to respond in damages to the injured party." 19 A.L.R.3d 928, 931.

A casual dictum in one Fifth Circuit case should not turn us from the overwhelming sentiment that common liability for purposes of contribution arises if each tortfeasor is legally liable to respond in damages to the injured party. We are also impressed by the fact that the third-party defendant here has not based its motion to dismiss on a lack of common liability, nor even argued the point.

■ The second issue in this case is the extent to which contribution is affected by a settlement of the main action between the defendant and plaintiff. It is generally held, absent a contrary state provision, that one who settles a case without a final jury judgment against it, may recover contribution. Prosser, Torts 3d, Ch. 8, § 47; Annot., 6 A.L.R.2d 1307 (1966); *Zontelli Bros.,* supra; *Chicago & N. W. Ry.,* supra; *Chicago, R. I. & P. R. R.,* supra.

■ Nothing in Georgia Code § 105–2012, dealing with contribution compels a contrary decision. That statute does not require that a judgment must be entered adjudging the defendant liable before contribution may be pursued. In full, § 105–2012 provides that:

"(1) Where the tortious act does not involve moral turpitude, contribution among several trespassers may be enforced just as if they had been jointly sued.

"(2) If judgment is entered jointly against several trespassers, and is paid off by one, the others shall be liable to him for contribution."

Prior to the 1966 amendment adding section (1), contribution in Georgia was allowed only if the defendants were jointly sued, a judgment entered against both and payment made by only one, in excess of his pro rata share. The purpose of the 1966 amendment, *see* Acts 1966, p. 433, was to change the common

law rule as previously codified in § 105–2012 by inserting section (1) and leaving the old language as section (2). There is no reason to think that invocation of the new language is dependent on an actual judgment. Nothing in the actual wording of (1) of § 105–2012 compels such a reading and we should not struggle to find such a meaning. The statement that contribution should be allowed "as if they had been jointly sued" should not be interpreted to mean that all of the old rules inherent in the language of (2) should be incorporated into a section which was meant to be a departure from past practice. Settlements would be discouraged in a vast number of cases were such to be the law in Georgia. No Georgia cases construing the new language in § 105–2012 seem to hold that a judgment of liability is a prerequisite to contribution. Southern Nitrogen Co. v. Stevens Shipping Co., 114 Ga.App. 581, 585, 151 S.E.2d 916, 920 (1966), cited by the third-party defendant, seems to rest on a defect in pleading:

"* * * The plaintiff does not allege, however, that payment to Borden Chemical Company was made under the force of a legal judgment obtained against it by Borden, nor does the plaintiff allege that it was under any legal liability to Borden for the alleged damages sustained by the Borden Company resulting from the use of the contaminated urea. The petition simply alleges that the plaintiff negotiated a settlement with the Borden Company 'in order to satisfy continuing demands made on it by Borden.'

\*     \*     \*     \*     \*     \*

"* * * [I]t is clear that in order for one seeking indemnity to recover, he must allege and prove that he has sustained an actual legal liability to the injured party (see 42 C.J.S. Indemnity § 25 [p. 603]); and the petition in this case is clearly lacking in such essential allegation."

Not only does this decision rest on matters of pleading not involved in the instant action, but it deals with indemnity and does not interpret the contribution statute, § 105–2012, with which we are concerned. Moreover, the cause of action in *Southern Nitrogen* arose before the 1966 amendment to the contribution law of Georgia. *See* Ross & Co. v. White, 224 Ga. 324, 161 S.E.2d 857 (1968). Nor are we controlled by the statement in Thornhill v. Bullock, 118 Ga.App. 186, 162 S.E.2d 886 (1968), that there is no right of contribution in Georgia until a judgment is entered. There, a suit had been filed against two defendants, one a resident of the county of suit, the other a nonresident. The jury found in favor of the resident defendant and against the nonresident, thereby ending the court's jurisdiction over the nonresident. A renewal suit was brought by the plaintiff against the nonresident, this time in his home county. The court stated that the precise question before it was whether the renewal was defective for failure to bring the second action against both defendants, and held that both were unnecessary to a good cause of action since they were not both necessary parties to the initial action. In response to the argument that plaintiff's election to sue both defendants vested in the defendants a right of contribution making both necessary parties to the second renewal action, the court stated that no right to contribution arose until judgment was entered. In this context, the court was probably referring to § 105–2012(2), since that old procedure dealt with cases in which a joint suit was filed. More likely, the cause of action arose before the effective date of the 1966 amendment, March 10, 1966, and, following *Ross,* supra, the court applied the statute as it existed prior to its amendment.

This is substantiated by the court's cite of the provision, without reference to subsections.

The crucial factor is that the obligation entered by the defendant was not truly "voluntary." To be involuntary, judgment need not be entered as to liability, only a legal obligation, including settlement of a suit pursuant to a consent judgment, is necessary. *Zontelli Bros.,* supra; 18 C.J.S. Contribution § 4.

However, the third-party defendant is entitled to certain safeguards in the third-party action. Thus, to carry the day on its contribution claim, Southern Railway must show that its payment was made in good faith, without collusion or impropriety, States Steamship Co. v. Howard, 180 F.Supp. 461 (D.Or. 1960), must prove the reasonableness of its settlement and demonstrate its own liability to the plaintiff, Prosser, Torts 3d, Ch. 8, § 47, and must bear the burden of proving that the plaintiff in the main action was free from contributory negligence, if that would have provided the third-party defendant with a defense in a direct suit against it by the plaintiff. *Chicago, R. I. & P. R. R.,* supra; *Fort Worth,* supra; *Panichella v. Pennsylvania Ry.,* supra; *Kennedy v. Pennsylvania Ry.,* supra; Annot., 19 A.L.R. 3d 928, § 2, supra; Annot., 6 A.L.R.2d 1307, at § 4, supra. This latter requirement is necessary to preserve a good defense the third-party defendant would otherwise have in a direct action by the plaintiff.

In short summary, the third-party defendant's motion to dismiss is denied, subject to the safeguards outlined above. Defendant's objections to the interrogatories propounded by the third-party defendant shall be set by the Clerk for oral hearing at the earliest available date.